UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DISABILITY RIGHTS NEW YORK, | **COMPLAINT** |
| Plaintiff | |
| v. | |
| NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, AND ANTHONY J. ANNUCCI, in his official capacity as the Acting Commissioner of the New York State Department of Corrections and Community Supervision, | Case No. 1:20-CV-1487 (TJM/DJS) |
| Defendants. | |

## I. INTRODUCTION

1.  Plaintiff Disability Rights New York ("DRNY"), the federally authorized and state-designated Protection and Advocacy system in the State of New York pursuant to N.Y. Exec. Law § 558(b), brings this action to enforce its rights under federal law to access records pursuant to the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. § 15041 et seq.; and the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. § 10801 et seq.

2.  DRNY brings this action to enforce its authority under the DD and PAIMI Acts to obtain records of those incarcerated individuals who have alleged or been the subject of abuse and neglect or rights violations and requested DRNY's assistance.

3.  Defendants New York State Department of Corrections and Community Supervision ("DOCCS") and Anthony J. Annucci have refused to provide DRNY with

1

complete, unredacted records, requested pursuant to the DD and PAIMI Acts and pertaining to DRNY clients in DOCCS' custody.

4. Defendants' actions interfere with DRNY's federal mandate to protect people with disabilities in New York State, investigate allegations of abuse and neglect, and provide legal advocacy.

5. DRNY seeks declaratory and injunctive relief to obtain access to records, as well as attorney's fees and costs.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7. Plaintiff's cause of action arises under the PAIMI Act, 42 U.S.C. § 10801 et seq., and DD Act, 42 U.S.C. § 15041 et seq.

8. This Court has the authority to grant declaratory and injunctive relief under 28 U.S.C. § 2201 and § 2202.

9. Venue is proper in the Northern District of New York under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims in this lawsuit occurred in this District.

## III. PARTIES
### A. Plaintiff

10. Disability Advocates, Inc. is an independent non-profit corporation organized under the laws of the State of New York.

11. Disability Advocates, Inc. does business as and files this Complaint under the name Disability Rights New York.

12. At all times relevant to this action, DRNY has been and is the statewide Protection and Advocacy ("P&A") agency designated by the Governor of the State of New York to protect and advocate for persons with disabilities.

13. DRNY is a part of a nationwide network of disability rights agencies authorized to (1) investigate incidents of abuse and neglect of persons with disabilities; (2) pursue administrative, legal, and other appropriate remedies on their behalf; and (3) provide technical assistance, information, and referrals relating to programs and services addressing the needs of persons with disabilities.

14. DRNY has authority under federal law to gain broad access to facilities, individuals, and their records in order to detect, investigate, and prevent abuse and neglect or rights violations of individuals with disabilities.

15. DRNY is allotted federal funds pursuant to the PAIMI and DD Acts, and is thereby obligated to provide protection and advocacy for persons with mental illness and developmental disabilities.

### B. Defendants

16. Defendant DOCCS is established pursuant to New York Correction Law § 5.

17. Defendant DOCCS is located at The Harriman State Campus, Building 2, 1220 Washington Avenue, Albany, New York 12226.

18. Defendant Anthony J. Annucci is the Acting Commissioner of DOCCS.

19. Defendant Annucci is responsible for the operation and administration of DOCCS. New York Correction Law § 70(3)(a) and § 70(7)-(8).

20. Defendant Annucci maintains offices at The Harriman State Campus, Building 2, 1220 Washington Avenue, Albany, New York 12226.

21. Defendants (collectively Defendant DOCCS and Defendant Annucci) manage and operate correctional facilities in New York State. New York State Correction Law § 70.

22. Defendants' correctional facilities are "facilities" as defined in the PAIMI Act. 42 U.S.C. § 10802(3).

23. Defendants' correctional facilities are "locations" under the DD Act as their facilities provide services, supports, and other assistance to individuals with disabilities, including the individuals who are referred to in this Complaint. 42 U.S.C. § 15043(a)(2)(H).

24. Defendants' correctional facilities are "service providers" under the DD Act because they are locations where services, supports, and other assistance are provided to persons with disabilities. 42 U.S.C. § 15043(a)(2)(H).

25. Defendant DOCCS confines individuals with disabilities in its correctional facilities.

26. Individuals in DOCCS' custody receive care, treatment, services, supports, and habilitation including, but not limited to: screening, evaluation, counseling, behavioral therapies, medication treatment and supervision, assistive devices, and special education services.

## IV. FACTS

### A. Relevant Statutes and Regulations

27. The DD and PAIMI Acts authorize the designated P&A system to have access to records of persons with disabilities.

28. As the designated P&A system for the State of New York, DRNY's authority to access records includes, but is not limited to:

a. All records of individuals with developmental disabilities and mental illness who have authorized DRNY to access their records. 42 U.S.C. §§ 15043(a)(2)(I)(i) and 10805(a)(4)(A);

b. All records of any individual with a developmental disability or mental illness if: (1) the individual cannot authorize access due to his or her mental or physical state; (2) the individual does not have a legal guardian or legal representative; and (3) DRNY has received a complaint about the individual's treatment or DRNY has determined there is probable cause to believe said individual has been subject to abuse or neglect. 42 U.S.C. §§ 15043(a)(2)(I)(ii) and 10805(a)(4)(B); and

c. All records of an individual with a developmental disability or mental illness who has died. 42 U.S.C. §§ 15043(a)(2)(J)(ii)(II) and 10805(a)(4)(B).

29. DRNY is entitled to access draft or final documents, including handwritten notes, electronic files, photographs, or video or audio tape records. 42 C.F.R. § 51.41(c); 45 C.F.R. § 1326.25(b).

30. DRNY's access authority includes reports and records prepared by an agency charged with investigating incidents of abuse, neglect, injury, or death of an individual with a developmental disability or a mental illness. 42 U.S.C. § 10806(b)(3); 15043(c)(2).

31. DRNY's access authority includes access to documents regarding the steps taken to investigate the incidents; reports and records, including personnel records; supporting information that was relied upon in creating a report, including all information and records used and reviewed in preparing reports; records that describe persons who were interviewed;

physical and documentary evidence that was reviewed; and related investigative findings. 42 C.F.R. § 51.41; 45 C.F.R. § 1326.25.

32. Under the DD Act, DRNY must have access to these records within three business days of making a request, or, in the case of records pertaining to a deceased individual, within 24 hours of the request. 42 U.S.C. § 15043(a)(2)(J)(i)-(ii).

33. The PAIMI Act's implementing regulations require that access to these records be provided promptly. 42 C.F.R. § 51.41(a).

34. If DRNY's access to records is delayed or denied, DRNY must be provided with a written statement of reasons for the delay or denial. 42 C.F.R. § 51.43; 45 C.F.R. § 1326.26.

## B. DOCCS' Failure to Provide Access to Records

*1. Incarcerated Individual A's Records[1]*

35. On or around March 12, 2019, Incarcerated Individual A, an individual with a developmental disability in DOCCS' custody, requested legal assistance from DRNY.

36. In May 2019, Incarcerated Individual A executed authorizations permitting DRNY to access his records.

37. On or around February 24, 2020, DRNY requested physical access to Incarcerated Individual A's records.

38. In March 2020, DRNY provided DOCCS with releases signed by Incarcerated Individual A: an authorization for release of health information pursuant to the Health Insurance Portability and Accountability Act ("HIPAA") (OCA official form No. 960), an authorization for the release of mental health information (OMH 11C), and a general release authorizing DOCCS to share information and documents with DRNY.

---

[1] DRNY refers to each individual in DOCCS' custody identified in this Complaint by pseudonym, with names and identification numbers for each pseudonym filed under seal upon leave of this Court.

39. On March 11, 2020, a DRNY representative visited the facility where Incarcerated Individual A was located and physically inspected his records that were located at this facility.

40. DRNY tabbed the pages it requested in copy format, as DOCCS required of DRNY.

41. DOCCS did not provide DRNY copies of the tabbed records while on-site at the facility on March 11, 2020 or within the statutory timeframe set forth in the PADD Act. 42 U.S.C. § 15043(a)(2)(J)(i)-(ii).

42. DOCCS did not provide DRNY an invoice for the tabbed records while on-site at the facility on March 11, 2020, nor did it send it in the mail shortly thereafter.

43. On May 28, 2020, DRNY sent DOCCS a letter regarding outstanding P&A requests, including the request for Incarcerated Individual A's records.

44. On or around June 29, 2020, DRNY received for the first time an invoice from DOCCS for the cost of copying the records Incarcerated Individual A's that DRNY tabbed.

45. DRNY submitted a check for the cost of the copies on July 6, 2020.

46. DRNY received the records from DOCCS on July 31, 2020.

47. DOCCS redacted information from the records it provided to DRNY on July 31, 2020.

48. DOCCS also did not provide 83 pages of records that DRNY tabbed for copying on March 11, 2020.

49. The July 31, 2020 cover letter accompanying the copies stated that 83 of the requested pages were withheld in their entirety because they were exempted from release under the Freedom of Information Law ("FOIL"). DOCCS included a refund check for these pages.

50. DOCCS stated that redactions and document exemptions were made pursuant to N.Y. Public Officers Law § 87(2), (2)(b), (2)(f) and (2)(g).

51. Moreover, information concerning Incarcerated Individual A's disability was redacted within the copies DRNY received from DOCCS.

52. On September 2, 2020, DRNY sent a letter to DOCCS' Counsel detailing its right to complete and unredacted records and asking that they be provided immediately.

53. DOCCS did not respond to DRNY's September 2, 2020 letter.

54. On October 22, 2020, DRNY sent another letter to DOCCS to obtain access to copies of the full requested records in unredacted form.

55. On November 30, 2020, DRNY contacted DOCCS' Counsel by e-mail to follow-up regarding a response to DRNY's letter dated October 22, 2020.

56. As of the date of filing, DOCCS has not responded to DRNY's October 22, 2020 letter.

57. On October 6, 2020, DRNY received a letter from DOCCS dated October 1, 2020. The letter was about a different request for access to records of Incarcerated Individual A. The letter does not address the denial of access to records asserted in this Complaint.

58. As of the date of this filing, DRNY has not received unredacted copies of the requested records.

### 2. Incarcerated Individual B's Records

59. On or around January 1, 2020, Incarcerated Individual B, an individual with mental illness, died in DOCCS' custody.

60. Incarcerated Individual B had been placed in the Behavioral Health Unit, a unit designed for inmates with serious mental illness.

61. Incarcerated Individual B had also spent time in the Residential Crisis Treatment Program, which serves individuals in DOCCS' custody in need of crisis mental health care.

62. In December 2019 and January 2020, DRNY received complaints alleging that Incarcerated Individual B suffered abuse and neglect while in DOCCS' custody.

63. On February 13, 2020, DRNY requested physical access to Incarcerated Individual B's records pursuant to 42 U.S.C. § 10805(a)(4)(B); 42 U.S.C. § 15043(a)(2)(I)(ii); 42 C.F.R. § 51.41(c); 42 U.S.C. § 10806(b)(3)(A).

64. 42 U.S.C. § 10805(a)(4)(B) and 42 C.F.R. 51.41(b) specifically give the P&A access to all records pertaining to an individual with mental illness who has died and there is probable cause to believe that individual was subject to abuse or neglect based on a complaint made to the P&A.

65. DRNY made a determination that there was probable cause that Incarcerated Individual B was subject to abuse and neglect while in DOCCS' custody.

66. On February 14, 2020, DOCCS stated in an email that the State Commission of Correction ("SCOC") had not yet provided DOCCS with its investigation report and "as such, associated records remain subject to a pending investigation" and would not be available for DRNY's viewing during a scheduled February 18, 2020 on-site visit.

67. DRNY contacted DOCCS' Counsel by telephone to discuss its position and clarify DRNY's basis for obtaining the records on both February 14 and February 20, 2020.

68. DOCCS would not speak to DRNY about this issue and told DRNY's representative that communications on the matter must be through email.

69. On February 26, 2020, DRNY sent a letter to DOCCS' Counsel reiterating DRNY's authority to access Incarcerated Individual B's records and requesting that the cost for producing the requested records be provided by March 5, 2020.

70. In its letter dated February 26, 2020, DRNY advised DOCCS that DRNY's access to records and information is not stayed during the pendency of a state agency's related investigation.

71. By letter dated March 10, 2020, DOCCS responded that it would arrange for DRNY to have access to Incarcerated Individual B's records once the SCOC had completed its investigation.

72. On May 28, 2020, DRNY sent DOCCS a letter regarding outstanding P&A requests, including the request for Incarcerated Individual B's records.

73. In its letter, DRNY again reminded DOCCS of DRNY's right to access draft reports and underlying records during the pendency of a state agency's related investigation.

74. On September 2, 2020, DRNY, after having received no response from DOCCS, sent a letter to DOCCS' Counsel detailing its right to Incarcerated Individual B's records and asking that they be provided immediately.

75. As of the date of filing, DOCCS has not responded to DRNY's September 2, 2020 letter.

76. On October 6, 2020, DRNY received a letter from DOCCS dated October 1, 2020.

77. The October 1, 2020 letter, states that a request for records relating to the death investigation of Incarcerated Individual B could be submitted to the SCOC.

78. On October 22, 2020, DRNY sent DOCCS a letter repeating its request for Incarcerated Individual B's records and detailing its right to them.

79. On November 30, 2020, DRNY contacted DOCCS' Counsel by e-mail to follow-up regarding a response to DRNY's letter dated October 22, 2020.

80. As of the date of filing, DOCCS has not responded to the October 22 letter.

## V. PLAINTIFF'S CLAIMS

### FIRST CLAIM FOR RELIEF
### BASED ON VIOLATION OF THE DD ACT,
### IMPLEMENTING REGULATIONS AND
### 42 U.S.C. § 1983

81. Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

82. Defendants' refusal to timely provide unredacted records to DRNY violates the DD Act and its implementing regulations. 42 U.S.C. § 15043(a) and 45 C.F.R. § 1326.25.

83. Defendants have acted under color of state law to deprive DRNY of its federal rights under the DD Act.

84. Defendants' violation of the DD Act and its implementing regulations frustrates and interferes with DRNY's federal mandate to protect people with disabilities in New York State; investigate allegations of abuse and neglect; provide legal advocacy for people with disabilities; determine whether an investigation by DRNY should be conducted; and determine whether corrective action should be taken.

85. DRNY is entitled to relief under 42 U.S.C. § 15043(a)(2)(i) and 42 U.S.C. § 1983.

86. DRNY is entitled to recover its attorney fees, costs and expenses in this action pursuant to 42 U.S.C. § 1988.

### SECOND CLAIM FOR RELIEF
### BASED ON VIOLATION OF THE PAIMI ACT,
### IMPLEMENTING REGULATIONS AND
### 42 U.S.C. § 1983

87. Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

88. Defendants' refusal to promptly provide records to DRNY violates the PAIMI Act and its implementing regulations. 42 U.S.C. § 10805(a), 42 U.S.C. § 10806, and 42 C.F.R. § 51.41.

89. Defendants have acted under color of state law to deprive DRNY of its federal rights under the PAIMI Act.

90. Defendants' violation of the PAIMI Act and its implementing regulations frustrates and interferes with DRNY's federal mandate to protect people with disabilities in New York State; investigate allegations of abuse and neglect; provide legal advocacy for people with disabilities; determine whether an investigation by DRNY should be conducted; and determine whether corrective action should be taken.

91. DRNY is entitled to relief under 42 U.S.C. § 10805(a)(1)(B) and 42 U.S.C. § 1983.

92. DRNY is entitled to recover its attorney fees, costs and expenses in this action pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF BASED ON FEDERAL LAW PREEMPTION

93. Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

94. The DD and PAIMI Acts authorize DRNY to access records, including reports and records prepared by an agency charged with investigating incidents of abuse, neglect, injury, or death of an individual with a developmental disability or a mental illness. 42 U.S.C. §§ 10805(a), 10806(b)(3), and 15043; 29 U.S.C. § 794e(f).

95. The DD and PAIMI Acts and their implementing regulations expressly preempt state law. 42 U.S.C. § 10806(b)(2)(C); 42 C.F.R. § 51.31(i); 45 C.F.R. § 1326.21(f); 29 U.S.C. § 794e(f).

96. Defendants assert that N.Y. Public Officers Law §87, N.Y. Public Health Law § 18, Mental Hygiene Law § 33.13, and Public Officers Law § 95(6)(c) allow the redaction of records produced to DRNY notwithstanding the DD and PAIMI Acts and their implementing regulations.

97. As interpreted and applied by Defendants, N.Y. Public Officers Law §87, N.Y. Public Health Law § 18, Mental Hygiene Law § 33.13, and Public Officers Law § 95(6)(c) are preempted by federal law, including 42 U.S.C. §§ 10805(a)(4), 10806(b)(2)(C), 10806(b)(3)(A), 15043(a)(2)(I) and 15043(c); 42 C.F.R. §§ 51.31(i), 51.41(b) and 51.41(c); 29 U.S.C. § 794e(f); and 45 C.F.R. §§ 1326.21(f), 1326.25(a) and 1326.25(b).

98. Defendants' violations of the DD and PAIMI Acts, and their implementing regulations, frustrate and interfere with DRNY's federal law mandate to protect people with disabilities in New York State, investigate allegations of abuse and neglect, provide legal advocacy for people with disabilities, determine whether investigations conducted by state agencies charged with investigating allegations of abuse and neglect were fully and independently conducted, determine whether a further investigation by DRNY should be conducted, and determine whether further corrective action should occur.

99. Defendants, acting under color of state law, have deprived and continue to deprive DRNY of its federal law right to access records.

100. Defendants have maintained and continue to maintain a policy of failing to provide timely responses to DRNY's requests to access records pursuant to DRNY's authority as the designated P&A system.

101. Plaintiff is entitled to relief under 42 U.S.C. § 1983 and the Supremacy Clause of the U.S. Constitution.

WHEREFORE, Plaintiff respectfully requests the following relief:

(1) Enter a declaratory judgment that Defendants have violated Plaintiff's rights under the DD and PAIMI Acts, and 42 U.S.C. § 1983 by:

    a. Failing to provide timely access to records requested under P&A authority;

    b. Failing to provide DRNY with access to complete, unredacted records; and

    c. Failing to provide DRNY with investigation records.

(2) Enter a declaratory judgment that federal law preempts N.Y. Public Officers Law §87, N.Y. Public Health Law § 18, Mental Hygiene Law § 33.13, and Public Officers Law § 95(6)(c) as interpreted and applied by Defendants;

(3) Grant a preliminary injunction ordering Defendants to provide Plaintiff with complete, unredacted copies of all records requested for Incarcerated Individuals A and B, pursuant to its federally mandated P&A authority;

(4) Grant a permanent injunction ordering Defendants to provide timely and complete responses to all future records requests made by Plaintiff pursuant to its federally mandated P&A authority;

(5) Retain jurisdiction over this action to ensure Defendants comply with the mandates of the DD and PAIMI Acts;

(6) Award of attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

(7) Order any other relief as the Court deems appropriate.

Dated: December 3, 2020　　　　　　　　　　　Respectfully submitted,

                                                  /s/ Brandy L. L. Tomlinson

                                                  DISABILITY RIGHTS NEW YORK
                                                  Brandy L. L. Tomlinson, Bar Roll # 519794
                                                  Alyssa Galea

Christina Asbee
44 Exchange Boulevard, Suite 110
Rochester, New York 14614
(518) 432-7861
(585) 348-9823 (fax) (not for service)