UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DISABILITY RIGHTS NEW YORK,<br><br>        Plaintiff<br><br>        v.<br><br>NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, AND ANTHONY J. ANNUCCI, in his official capacity as the Acting Commissioner of the New York State Department of Corrections and Community Supervision,<br><br>        Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No. 1:20-cv-01487-GTS-CFH |

___

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION**

DISABILITY RIGHTS NEW YORK
Brandy L. L. Tomlinson, Bar Roll # 519794
Alyssa Galea
Christina Asbee
44 Exchange Boulevard, Suite 110
Rochester, New York 14614
(518) 432-7861
(585) 348-9823 (fax) (not for service)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I. INTRODUCTION ........................................................................................................... 1

II. FACTS ............................................................................................................................ 1

    A. Incarcerated Individual A .......................................................................................... 1

    B. Incarcerated Individual B .......................................................................................... 2

III. ARGUMENT ................................................................................................................. 4

    A. DRNY IS THE DESIGNATED PROTECTION AND ADVOCACY SYSTEM AND IS ENTITLED TO ACCESS TO RECORDS MAINTAINED AND HELD BY DOCCS' CENTRAL OFFICE AND THE CORRECTIONAL FACILITIES IT OPERATES ........ 4

        1. DRNY is the Designated New York State Protection and Advocacy System ........... 4

        2. DRNY's Requests Meet the Statutory Criteria for Records Access ......................... 5

        3. DRNY is Entitled to Unredacted Records from DOCCS .......................................... 6

        4. DRNY is Entitled to Underlying Records Reviewed or Relied Upon in Preparing an Investigative Report .............................................................................................. 8

        5. DRNY is Entitled to Records within Specified Timeframes .................................... 9

    B. DRNY'S FEDERAL MANDATE TO PROTECT PEOPLE WITH DISABILITIES IN NEW YORK STATE MEETS THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION .............................................................................................................. 10

        1. DRNY is Likely to Succeed on the Merits of its Claims ........................................ 11

        2. DRNY Will Suffer Irreparable Harm Absent this Court's Intervention ................. 11

        3. The Balance of Hardships Weighs in Favor of DRNY ........................................... 12

        4. The Public Interest Will Be Advanced by the Provision of Preliminary Relief ...... 13

IV. CONCLUSION ............................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Ala. Disabilities Advocacy Prog. v. J.S. Tarwater Dev. Ctr.*, 894 F. Supp. 424 (M.D. Ala. 1995) .............. 9

*Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*, 97 F.3d 492, 499 (11th Cir. 1996) ................................................................................................................................12

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887 (2d Cir. 2015) ...............................10, 11

*Disability Rights New York v. New York State Dep't of Corr. & Cmty. Supervision*, No. 118CV0980GTSCFH, 2019 WL 4643814 (N.D.N.Y. Sept. 24, 2019) ................................5, 6, 11

*Disability Rights New York v. Northern Rivers Family Services, Inc.*, 1:16-cv-00176-GTS-CFH (N.D.N.Y. Jun. 2, 2016) ..............................................................................................................11, 12

*Disability Rights New York v. Wise*, 171 F. Supp.3d 54 (N.D.N.Y. 2016) ...............3, 7, 8, 9, 11, 12

*Michigan Prot. & Advocacy Serv., Inc. v. Flint Cmty. Sch.*, 146 F. Supp. 3d 897 (E.D. Mich. 2015) ..............................................................................................................................................9

*P&A System v. Freudenthal*, 412 F. Supp. 2d 1211 (D. Wyo. 2006) ............................................ 9

*Prot. & Advocacy For Persons With Disabilities v. Armstrong*, 266 F. Supp. 2d 303 (D. Conn. 2003) .......................................................................................................................................6, 11

*Wis. Coal. for Advocacy v. Busby*, No. 02-C-871, slip op. (E.D. Wis. Sept. 24, 2003) ................. 9

**Federal Statutes**

42 U.S.C. § 15001 ....................................................................................................................5, 13

42 U.S.C. § 15043 ...............................................................................................5, 6, 7, 8, 11, 13

42 U.S.C. § 10801 ....................................................................................................................5, 13

42 U.S.C. § 10805 ........................................................................................................5, 6, 7, 11, 13

42 U.S.C. § 10806 ...............................................................................................................7, 8, 11, 13

42 U.S.C. § 6000 *et seq.* ................................................................................................................5

**Federal Regulations**

42 C.F.R. § 51.31 ............................................................................................................................7

42 C.F.R. § 51.41 .....................................................................................................7, 8, 9, 11, 13

42 C.F.R. § 51.43 ............................................................................................................................9

45 C.F.R. § 1326.21 ........................................................................................................................7

45 C.F.R. § 1326.25 .................................................................................................7, 8, 9, 11, 13

45 C.F.R. § 1326.26 ...................................................................................................................9

**State Statutes**

Mental Hygiene Law § 33.13 ......................................................................................................7

N.Y. Public Health Law § 18 ......................................................................................................7

N.Y. Public Officers Law § 87 ....................................................................................................7

N.Y. Public Officers Law § 95 ....................................................................................................7

**Other Sources**

Andrea C. Armstrong, *No Prisoner Left Behind? Enhancing Public Transparency of Penal Institutions*, 25 STAN. L. & POL'Y REV. 435 (2014) ......................................................................13

# I. INTRODUCTION

Disability Rights New York (hereinafter "DRNY") is the Protection and Advocacy agency ("P&A") for individuals with disabilities in New York State. DRNY brings this action against New York State Department of Corrections and Community Supervision and Acting Commissioner Anthony J. Annucci (collectively "Defendants") for refusing to provide DRNY with timely access to complete, unredacted records of individuals in DOCCS' custody, as required by law. DRNY received allegations of abuse and neglect regarding individuals with disabilities who are incarcerated in correctional facilities operated by Defendants. DRNY also received requests for assistance with accessing disability services and programs within the correctional facilities operated by Defendants. Defendants' refusal to comply with federal law prevents DRNY from fulfilling its statutory mandates to investigate allegations of abuse and neglect and provide protection and advocacy services for individuals with disabilities. Immediate access to complete and unredacted records must be granted to Plaintiff so it can carry out its mandate to investigate complaints of abuse and neglect and provide services to individuals with disabilities.

# II. FACTS

**A. Incarcerated Individual A**

In March 2019, DRNY received a request for legal assistance from Incarcerated Individual A,[1] an individual with a developmental disability housed at a DOCCS facility. Keegan Decl. ¶3. Incarcerated Individual A executed releases authorizing DRNY to access his records. Keegan Decl. ¶4, Plaintiff Bates 1-3. In February 2020, DRNY requested physical access to Incarcerated Individual A's records. Keegan Decl. ¶5, Plaintiff Bates 4-5. In March 2020, DRNY provided

---

[1] Individuals identified in this case are referenced by pseudonym, pending Plaintiff's Motion seeking leave to file the summons and complaint using pseudonym, which will be filed once a case number is assigned.

DOCCS with the following releases signed by Incarcerated Individual A.: (1) an authorization for release of health information pursuant to Health Insurance Portability and Accountability Act ("HIPAA") (OCA official form No. 960); (2) an authorization for the release of mental health information (OMH 11C); and (3) a general release authorizing DOCCS to share information and documents with DRNY. Keegan Decl. ¶6, Plaintiff Bates 1-3, 6.

A DRNY representative conducted an on-site review of Incarcerated Individual A's records on March 11, 2020. Keegan Decl. ¶10. Following DOCCS' protocol, DRNY physically tabbed the pages of the available records for which copies were requested. Keegan Decl. ¶7. DOCCS provided an invoice dated June 29, 2020 and DRNY sent a check for the cost of the copies on July 6, 2020. Keegan Decl. ¶9-10, Plaintiff Bates 7-8. DRNY received copies of some of the tabbed documents on July 31, 2020 with a cover letter that stated 83 of the requested pages were withheld in their entirety because they were exempt from release under the Freedom of Information Law ("FOIL") and provided a refund check for those pages. Keegan Decl. ¶11-13, Plaintiff Bates 9-584. In the documents provided, DOCCS redacted some information related to Incarcerated Individual A's disability. Keegan Decl. ¶14, *See, e.g.* Plaintiff Bates 585-587. By letter dated September 2, 2020, DRNY notified DOCCS' counsel of its immediate right to copies of all tabbed records in unredacted form. Keegan Decl. ¶15, Plaintiff Bates 585-587. DRNY also reiterated this request in a letter dated October 22, 2020. Tomlinson Decl. ¶10, Plaintiff Bates 610-612. To date, DOCCS has not responded to DRNY's request or provided copies of the unredacted records. Keegan Decl. ¶16-17; Tomlinson Decl. ¶12-13.

### B. Incarcerated Individual B

Incarcerated Individual B, an individual with mental illness, died in DOCCS' custody on January 1, 2020. *See* Caturano Decl. ¶5. At the time of his death, Incarcerated Individual B resided

in the Behavioral Health Unit ("BHU") at Great Meadow Correctional Facility, which serves individuals with serious mental illness. Previously, he spent time in the Residential Crisis Treatment Program ("RCTP") at Sullivan Correctional Facility, which serves incarcerated individuals in need of crisis mental health care. *See* Plaintiff Bates 588-591.

DRNY received complaints alleging that Incarcerated Individual B may have been subjected to abuse and neglect while in DOCCS' custody. Caturano Decl. ¶4. To investigate, DRNY requested physical access to his records on February 13, 2020. Caturano Decl. ¶5-6, Plaintiff Bates 588-591. On February 14, DOCCS responded by email that the State Commission of Correction ("SCOC") had not yet provided DOCCS with its investigation report and "as such, associated records remain subject to a pending investigation" and would not be available for DRNY's viewing during its on-site visit. Caturano Decl. ¶7, Plaintiff Bates 592-595. DRNY contacted DOCCS' Counsel by telephone to discuss the response. Caturano Decl. ¶8-9. DOCCS refused to discuss the matter over the phone, and ordered DRNY to communicate regarding the matter via email and not telephone. Caturano Decl. ¶9. By letter dated February 26, 2020 sent the same day by email to CounselsOffice@doccs.ny.gov, DRNY notified DOCCS' Counsel that this Court has already expressly rejected DOCCS' position that the P&A is only entitled to finalized investigation reports. *Disability Rights New York v. Wise*, 171 F. Supp.3d 54 (N.D.N.Y. 2016). Caturano Decl. ¶11, Plaintiff Bates 596-597. DRNY advised DOCCS' Counsel of its authority to access Incarcerated Individual B's records and, because of DOCCS' own requirement that DRNY pre-pay for all records, requested that DOCCS provide a cost for producing the requested records by March 5, 2020. See Plaintiff Bates 596-597.

By letter dated March 10, 2020, DOCCS responded that they would arrange for access to the records once the SCOC has completed their investigation. Caturano Decl. ¶12, Plaintiff Bates

3

589-599. DRNY followed up with DOCCS by letters dated May 28, 2020 and September 2, 2020, reiterating to DOCCS the *Wise* decision and DRNY's entitlement to immediate access to Incarcerated Individual B's records. Tomlinson Decl. ¶3, Plaintiff Bates 585-587, 600-602. By letter dated October 1, 2020, DOCCS responded to DRNY's May 28, 2020 letter and stated that a request for records related to the death investigation of Incarcerated Individual B could be submitted to the SCOC. Tomlinson Decl. ¶6-9, Plaintiff Bates 607-609. DOCCS' October 1, 2020 letter did not address DRNY's access to DOCCS' own investigative documents, nor does it address DRNY's access to entirety of DRNY's request of Incarcerated Individual B's records, including those presumably not subject to investigative review. *See* Plaintiff Bates 607-609. DRNY reaffirmed and clarified its outstanding records request in a letter to DOCCS on October 22, 2020. Tomlinson Decl. ¶10, Plaintiff Bates 610-612. To date, DOCCS has not responded to this letter or provided records. Tomlinson Decl. ¶12-13; Caturano Decl. ¶13.

### III. ARGUMENT

**A. DRNY IS THE DESIGNATED PROTECTION AND ADVOCACY SYSTEM AND IS ENTITLED TO ACCESS TO RECORDS MAINTAINED AND HELD BY DOCCS' CENTRAL OFFICE AND THE CORRECTIONAL FACILITIES IT OPERATES.**

1. <u>DRNY is the Designated New York State Protection and Advocacy System</u>

DRNY is New York State's designated Protection and Advocacy System and in that capacity operates the Protection and Advocacy for Individuals with Developmental Disabilities ("PADD") program and the Protection and Advocacy for Individuals with Mental Illness ("PAIMI") program. In response to squalid conditions in New York's Willowbrook State School and other facilities, Congress passed the Developmental Disabilities Assistance and Bill of Rights Act ("DD Act) of 1975 to protect the rights of persons with developmental disabilities. 42 U.S.C.

4

§ 6000 *et seq.* More recently, Congress passed the Developmental Disabilities Assistance and Bill of Rights Act of 2000, which repealed and replaced the 1975 Act. 42 U.S.C. § 15001 *et seq.* The DD Act established the P&A system to advocate for persons with developmental disabilities and granted the P&A system authority to access service providers, residents, and their records. *Id.* at § 15043.

The P&A system was expanded when Congress passed the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"). 42 U.S.C. § 10801 *et seq.* The PAIMI Act was modeled after the DD Act and it created a parallel P&A program for protecting individuals with mental illness. *Id.* at § 10801. The PAIMI program has similar federal authority to access individuals, facilities, and records. *Id.* at § 10805.

### 2. DRNY's Requests Meet the Statutory Criteria for Records Access

i. *Incarcerated Individual A*

DRNY is entitled to access the records of an individual who is a client of the P&A system if the individual has authorized the system to have such access. 42 U.S.C. §§ 15043(a)(2)(I)(i), 10805(a)(4)(A). The DD and PAIMI Acts do not require DRNY to make any particular showing that an individual is a DRNY client. *Disability Rights New York v. New York State Dep't of Corr. & Cmty. Supervision*, No. 118CV0980GTSCFH, 2019 WL 4643814, at *27 (N.D.N.Y. Sept. 24, 2019). This Court has already determined that "Plaintiff is not required to identify an inmate's developmental disability or mental illness in its requests pursuant to the P&A Acts … [and] has adequately identified each inmate as a 'client' in its records requests in this proceeding." *Disability*

*Rights New York* at *27-28. Incarcerated Individual A is a client of DRNY's system and executed releases that entitle DRNY to access his records.[2]

    ii.    *Incarcerated Individual B*

The DD and PAIMI Acts permit the P&A to access the records of individuals with disabilities who have died. *Id.*; 42 U.S.C. §§ 15043(a)(2)(J)(ii)(II), 10805(a)(4)(B). In the case of an individual with mental illness who has died, the P&A is entitled to access their records when it has probable cause, based on a complaint received by the system, to believe that the individual may have been subjected to abuse or neglect. 42 U.S.C. § 10805(a)(4)(B)(iii). The P&A is not required to make any threshold showing that an individual had a mental illness in order to access their records. *Prot. & Advocacy For Persons With Disabilities v. Armstrong*, 266 F. Supp. 2d 303, 313 (D. Conn. 2003). The fact that a facility has housed inmates with mental illness and currently houses inmates who may be mentally ill is enough. *Id.* In Incarcerated Individual B's case, he had been placed in the BHU, a unit specifically for individuals with serious mental illness and had spent time in RCTP, which is for inmates requiring crisis mental health care. In its responses to DRNY, Defendants did not dispute that Incarcerated Individual B had a mental illness.

### 3. DRNY is Entitled to Unredacted Records from DOCCS

The law is clear that DRNY is entitled to unredacted records from DOCCS. "The statutes make clear that P&A systems such as DRNY are entitled to all records of subject individuals, and

---

[2] Although not required, DRNY identified Incarcerated Individual A as a client in its P&A Acts records request and provided signed releases from Incarcerated Individual A authorizing DRNY to access his records. Defendants did not dispute that Incarcerated Individual A was (and remains to date) a client of DRNY's and have not provided any information suggesting that DRNY was not entitled to Incarcerated Individual A's records on this basis. Rather, Defendants accepted the signed releases DRNY provided and permitted a DRNY representative to review Incarcerated Individual A's file in person at Five Points Correctional Facility. Defendants also provided DRNY with copies of some of the records after the in-person visit without objection that Incarcerated Individual A is not a client of DRNY.

give no indication that investigative agencies should redact or withhold portions of their reports." *Disability Rights New York v. Wise*, 171 F. Supp. 3d 54, 59 (N.D.N.Y. 2016). The DD and PAIMI Acts and their implementing regulations expressly preempt state law. 42 U.S.C. § 10806(b)(2)(C); 42 C.F.R. § 51.31(i); 45 C.F.R. § 1326.21(f).

First, Defendants violate federal law when they withhold documents responsive to records requests made under P&A authority based on FOIL exemptions and redactions. DOCCS already provided DRNY with physical access to the entire unredacted paper file in question. There is no logical reason to now redact information that DOCCS already turned over to DRNY during its in-person inspection.

Second, Defendants incorrectly identified DRNY's P&A records request as a FOIL request. N.Y. Public Officers Law §87, N.Y. Public Health Law § 18, Mental Hygiene Law § 33.13, and N.Y. Public Officers Law § 95(6)(c) preempt the P&A Acts' records access provisions, including 42 U.S.C. §§ 10805(a)(4), 10806(b)(2)(C), 10806(b)(3)(A), 15043(a)(2)(I) and 15043(c); 42 C.F.R. §§ 51.31(i), 51.41(b) and 51.41(c); and 45 C.F.R. §§ 1326.21(f), 1326.25(a) and 1326.25(b).

Third, DOCCS misapplied the Health Insurance Portability and Accountability Act ("HIPAA") as a basis to withhold information. The DD Act regulations specifically permit DRNY's access to personal health information otherwise protected under HIPAA. 45 C.F.R. § 1326.25(e). HIPAA does not interfere with DRNY's access to records it requests pursuant to the P&A Acts and implementing regulations. *Id.* Further, DRNY provided DOCCS with a HIPAA-specific release signed by the client and DOCCS expressed no concerns about its validity.

### 4. DRNY is Entitled to Underlying Records Reviewed or Relied Upon in Preparing an Investigative Report

DRNY is entitled to access records underlying investigative reports. DRNY's access authority provides access to reports and records prepared by an agency charged with investigating incidents of abuse, neglect, injury, or death of an individual with a developmental disability or a mental illness. 42 U.S.C. § 10806(b)(3) and § 15043(c)(2). Access authority includes access to documents regarding the steps taken to investigate the incidents; reports and records, including personnel records; supporting information that was relied upon in creating a report, including all information and records used and reviewed in preparing reports; records that describe persons who were interviewed; physical and documentary evidence that was reviewed; and related investigative findings. 42 C.F.R. § 51.41; 45 C.F.R. § 1326.25. DRNY is entitled to access draft or final documents, including handwritten notes, electronic files, photographs, or video or audio tape records. 42 C.F.R. § 51.41(c); 45 C.F.R. § 1326.25(b).

This Court already addressed this very issue in *Wise*, 171 F. Supp.3d at 61. In *Wise*, this Court considered, and firmly rejected, the state agency's argument that it was not required to release the records relied upon by the agency in conducting its investigations or drafts of its investigatory reports. "[T]he regulations, on their face, require the disclosure of draft reports from investigatory agencies." *Id.* This Court determined that the P&A regulations unambiguously provide DRNY access to information and records DOCCS used or reviewed in preparing investigatory reports. Thus, Defendants' refusal to provide DRNY access to any records until the completion of the SCOC investigation of Incarcerated Individual B's death is a blatant diversion from this Court's ruling.

Defendants wrongly suggested in DOCCS' October 1, 2020 letter that DRNY should contact the SCOC to request investigation records. DRNY requested records from DOCCS that

may or may not be included in Incarcerated Individual B's file in SCOC's possession. Defendants ignored DRNY's requests for DOCCS' own investigatory records or access to any other of Incarcerated Individual B's records in their possession, which this Court's *Wise* decision recognizes as in DRNY's purview to access. 171 F. Supp.3d at 61.

DRNY is entitled to access all of the requested records Defendants have in their possession. *Id.* Defendants cannot advise DRNY to contact another agency for the requested records if they are in possession of said records and that is not a proper response for denying access. 42 C.F.R. § 51.43; *Wise*, 171 F. Supp.3d at 58.

5. DRNY is Entitled to Records within Specified Timeframes

DOCCS' significant and unjustified delay in responding to DRNY's records requests blatantly violates the DD and PAIMI Acts. The DD Act regulations requires that a P&A shall have access to records within three business days after the P&A's written request is received. 45 C.F.R. § 1326.25. If a party other than the P&A performs the copying of the records, this timeline still applies. *Id.* If the P&A's access is delayed beyond the three days, the record holder must provide a written statement with the reasons for the denial or delay within one business day after the three-day deadline expires. 45 C.F.R. § 1326.26. The PAIMI Act Access Regulations require that access to these records be provided "promptly." 42 C.F.R. § 51.41(a).[3] "Promptly" has been interpreted to mean within five business days. *Michigan Prot. & Advocacy Serv., Inc. v. Flint Cmty. Sch.*, 146 F. Supp. 3d 897, 908 (E.D. Mich. 2015).

---

[3] Although the timeline described in the DD Act does not expressly apply to the PAIMI Act, "it suggests that 'prompt' is more likely a matter of days or perhaps weeks, but not months." *Wis. Coal. for Advocacy v. Busby*, No. 02-C-871, slip op. at 15 (E.D. Wis. Sept. 24, 2003); *see also P&A System v. Freudenthal*, 412 F. Supp. 2d 1211, 1225 (D. Wyo. 2006) (holding that deadlines in the DD Act guide the time frame for responding to records requested under the PAIMI Act); *Ala. Disabilities Advocacy Prog. v. J.S. Tarwater Dev. Ctr.*, 894 F. Supp. 424, 428 (M.D. Ala. 1995) (stating that the records access provisions of the P&A Acts are meant to be consistent).

Defendants have taken an unreasonable amount of time to produce the records at issue, well-beyond the statutory timeframes. In its correspondences with Defendants, DRNY has expressed an understanding that the COVID-19 pandemic has caused delays and challenges. However, despite DRNY's leniency on the basis of the pandemic, Defendants have made no attempts to correct their violations of the DD and PAIMI Acts. For example, Defendants waited four months to respond to DRNY's May 28, 2020 letter, and in that response, DOCCS failed to provide any substantive reasoning for its unlawful withholding of records.

DOCCS explained that the records access issues have been caused by the pandemic, however the disputes at issue pre-dates the pandemic. Defendants expended more time and resources reviewing and unlawfully redacting Incarcerated Individual A's records than it would have taken to simply copy the requested pages as the DD and PAIMI Acts and implementing regulations require. Likewise, had Defendants granted DRNY access to Incarcerated Individual B's records in February 2020 when the request was made, that matter could have been resolved well prior to the beginning of the state shutdown (New York State on Pause). It is only because of Defendants' willful ignorance of the P&A Acts and regulations and DRNY's records access authority that this case is before this Court.

### B. DRNY'S FEDERAL MANDATE TO PROTECT PEOPLE WITH DISABILITIES IN NEW YORK STATE MEETS THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION

DRNY is entitled to injunctive relief because it suffers irreparable harm caused by Defendants' obstruction of its statutory obligation to protect people with disabilities in New York State, investigate allegations of abuse and neglect, and provide legal advocacy. "A party seeking a preliminary injunction must demonstrate: (1) a likelihood of success on the merits or…sufficiently serious questions going to the merits to make them fair ground for litigation and

a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (internal citations omitted).

    1. <u>DRNY is Likely to Succeed on the Merits of its Claims</u>

DRNY is likely to succeed on the merits of its claims. The records access requested by DRNY falls squarely within DRNY's federal access authority. *See*, Sec. A., *supra*. The DD and PAIMI Acts permit DRNY to access unredacted records, draft investigatory reports, underlying records used in investigations, and records of individuals who have died. 42 U.S.C. §§ 15043(a)(2), 15043(c), 10805(a), 10806(b); 42 C.F.R. § 51.41; 45 C.F.R. § 1326.25. Further, these issues have all been previously decided by this Court in DRNY's favor. *See Wise*, 171 F.Supp.3d at 59-62.

    2. <u>DRNY Will Suffer Irreparable Harm Absent this Court's Intervention</u>

DRNY has and will continue to suffer irreparable harm if Defendants continue to deny DRNY access to the records it requested. Defendants' refusal to provide complete and unredacted records requested pursuant to the P&A Acts in a timely manner prevents DRNY from carrying out its statutory mandate to protect people with disabilities in New York State, investigate allegations of abuse and neglect, and provide legal advocacy. 42 U.S.C. §§ 15043(a), 10805(a).

This Court has already determined that a P&A is irreparably harmed if it is "prevented from pursuing fully its right to access records in furtherance of its statutory duties." *Disability Rights New York*, 2019 WL 4643814 at *21. Similarly, other courts have consistently held that a P&A is irreparably harmed if it cannot access records to carry out its duty to investigate abuse and neglect. *Armstrong*, 266 F. Supp. 2d at 311; *see also Disability Rights New York v. Northern Rivers Family Services, Inc.*, 1:16-cv-00176-GTS-CFH at 36 (N.D.N.Y. Jun. 2, 2016) (This Court

recognized that that no federal cases exist that have found a lack of irreparable harm when a P&A was unable to meet its statutory mandate.).

Furthermore, this Court has already determined that a state agency's "contention that access to the entirety of information included in the reports of investigatory agencies is not essential to a P&A system's statutory mandates is contrary to the explicit language of the statutes granting P&A systems access to such reports." *Wise,* 171 F. Supp.3d at 62. When DRNY cannot access unredacted records it requests pursuant to its P&A Act authority within the regulatory timeframe by which it is entitled to receive the records, it is irreparably harmed because it cannot fulfill its mandate as the P&A system serving New Yorkers with disabilities. The irreparable nature of the harm sustained by DRNY as a result of Defendant's refusal to provide records access and the lack of an adequate remedy without this Court's intervention supports plaintiff's motion for injunctive relief.

3. The Balance of Hardships Weighs in Favor of DRNY

Defendants will suffer no hardship in providing the records DRNY requested and requests moving forward in conformity with the P&A Acts. A state agency cannot claim an interest in avoiding investigations of abuse or neglect regarding individuals with disabilities. *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*, 97 F.3d 492, 499 (11th Cir. 1996). In fact, permitting DRNY to fulfill its statutory mandate would benefit Defendants by helping them to be aware of and correct issues of abuse and neglect and individual rights violations within DOCCS' facilities. DRNY understood the impacts the pandemic had on Defendants, and provided reasonable extensions of timeframes to turn over the requested records. DRNY repeatedly attempted to communicate with Defendants to resolve this matter outside out court. Yet,

Defendants continue to ignore Plaintiff's efforts to resolve the issues, and expend valuable time and resources refusing to comply with the DD and PAIMI Acts and their implementing regulations.

Conversely, DRNY suffers hardship from its inability to fulfill its statutory duty to investigate allegations of abuse and neglect and provide individual advocacy caused by the Defendants' failure to provide records access. 42 U.S.C. §§ 15043(a)(2), 15043(c), 10805(a), 10806(b); 42 C.F.R. § 51.41; 45 C.F.R. § 1326.25. Without timely access to complete and unredacted information, DRNY has no means by which to complete its investigations and fulfill its obligations – both in law and ethics – to provide competent legal representation. As these delays persist, individuals with disabilities in Defendants' facilities remain in danger of abuse or neglect. Witnesses may be moved, released, or otherwise become unavailable. Furthermore, without unredacted records, DRNY is prevented from making a full and accurate assessment of relevant issues. In sum, Defendants' actions have caused DRNY to face a significant hardship that will not abate without relief from the Court and far outweigh DOCCS' justifications for violating federal law.

4. The Public Interest Will Be Advanced by the Provision of Preliminary Relief

Central to the very purpose of creating the P&A system was to serve the public interest of ensuring that individuals with disabilities are protected from abuse and neglect. 42 U.S.C. §§ 15001, 10801. The P&A's ability to access records of individuals who are in institutions such as Defendants' facilities, where they are largely hidden from the public eye, is a core element of fulfilling this purpose. All members of the public maintain an interest in knowing that the criminal justice system operates fairly, justly, and in accordance with the laws. *See* Andrea C. Armstrong, *No Prisoner Left Behind? Enhancing Public Transparency of Penal Institutions*, 25 STAN. L. & POL'Y REV. 435, 466-469 (2014). Oversight to ensure that people with disabilities are

vulnerable to abuse in the DOCCS' system is critical. Thus, ordering DOCCS to provide DRNY with the records it seeks in a timely and unredacted format serves the public interest because without the requested records, DRNY cannot effectively function as the P&A for New York State.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's request for a preliminary injunction and adopt the proposed order in its entirety.

Date: December 4, 2020  /s/ Brandy L. L. Tomlinson
  _____

DISABILITY RIGHTS NEW YORK
Brandy L. L. Tomlinson, Bar Roll # 519794
Alyssa Galea
Christina Asbee
44 Exchange Boulevard, Suite 110
Rochester, New York 14614
(518) 432-7861
(585) 348-9823 (fax) (not for service)